MALDEN TRUST COMPANY, trustee, *vs.* CHARLES C. BROOKS & others.

Middlesex.     April 3, 1933. — June 26, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Partnership,* Death of partner.  *Equity Pleading and Practice,* Appeal, Findings by judge, Parties.  *Evidence,* Presumptions and burden of proof.

On appeal in a suit in equity with findings of fact and a report of the evidence, this court deals *de novo* with documentary evidence and with the inferences to be drawn from agreed facts, but findings of fact by the trial judge based in whole or in part upon oral testimony are final unless clearly wrong.

The decision made in *Malden Trust Co.* v. *Brooks,* 276 Mass. 464, that the petitioner was a party entitled to maintain the petition, was reaffirmed.

The question upon whom is the burden of proving a fact becomes immaterial if such fact is found.

On the facts, no breach of the fiduciary duty of a surviving member of a partnership toward the estate of a deceased partner was shown in a transaction, fair and reasonable with respect to the estate in the light of then existing conditions and made openly and fairly without failure by the surviving partner to disclose material facts to the executor of the decedent's will, who acted solely in the interest of the estate, was advised by his own competent counsel, and was not guilty of any

breach of his trust, whereby a corporation was organized to take over the partnership business, the interest of the estate in the partnership was purchased by the partnership and transferred by the estate to the corporation, an indebtedness of the partnership to the estate was adjusted and the estate received cash, preferred stock in the corporation and a mortgage of its real estate, although great prosperity of the corporation in later years because of unforeseen conditions resulted in large profits to the surviving partner.

Even if one of two surviving partners dealing jointly with the estate of a deceased partner was guilty of a breach of his fiduciary duty to the estate as a trustee under the decedent's will, the other surviving partner was not accountable to the estate by reason of such breach if he did not participate therein nor derive benefit therefrom.

PETITION IN EQUITY, filed in the Probate Court for the county of Middlesex on September 29, 1930.

The proceedings are described in the opinion. The decree dismissing the petition was entered by order of *Leggat,* J.

*A. N. Hunt,* (*F. M. Sawtell* with him,) for the petitioner.

*A. H. Wellman,* (*S. H. Wellman* with him,) for Freelon Q. Ball, executor.

*J. F. Neal,* (*L. R. Shaffer* with him,) for Edmund Ball Hopkins and others.

*E. F. McClennen,* for Charles C. Brooks and another.

FIELD, J. Carlos E. Ball died January 10, 1909. By his will he gave all his property to Edward C. Ball, William Leavens and Frederick H. Page in trust to "hold, manage, control, invest and re-invest the same," to pay to his wife Elizabeth W. Ball "the income thereof for and during the term of her natural life," and, under certain conditions, portions of the principal, to divide after her death one third of the principal of the trust fund among his heirs at law other than his grandson Edmund Ball Hopkins, to continue to hold the remaining two thirds of the trust fund and use income thereof for the care, maintenance and education of said grandson, to pay to him one half of said trust fund when he attained the age of twenty-five years and the other half when he attained the age of forty years and, if said grandson died before he had received the whole thereof, to distribute the property remaining in the trust fund to his issue or, in default of such issue, to the heirs at law of the testator.

Elizabeth W. Ball was named as executrix in the will and was appointed as such February 16, 1909. She died April 12, 1924, and an administrator with the will annexed has since been appointed. The trustees named in the will were duly appointed as such March 22, 1909. They ceased to be trustees by death or resignation and on March 4, 1926, the Malden Trust Company was appointed trustee.

From 1905 until his death the testator was a partner with Edward C. Ball and the respondent Charles C. Brooks in the firm of Conant Ball and Company, engaged in the business of manufacturing chairs at Gardner, Massachusetts. The partnership articles provided that ownership of the capital of the partnership and profits and losses should be divided among the partners in the proportion of one half to Carlos E. Ball, one third to Edward C. Ball and one sixth to Charles C. Brooks. Legal title to the real estate occupied by the partnership for its business — apparently recognized by the partners as partnership property, see *Dyer* v. *Clark*, 5 Met. 562; *Taber-Prang Art Co.* v. *Durant*, 189 Mass. 173 — stood in the names of the partners in the proportions in which they owned the capital of the partnership. The share of each partner in the profits was to be credited annually to such partner on the books of the company on a so called surplus account and it was provided that any partner might at any time withdraw the amount standing to his credit on such surplus account, but all sums so credited were to bear interest, at the rate of five per cent per annum, credited annually. The articles provided also that in "case of the death of either partner the amount credited upon the books of the company to his surplus account shall remain in the business of the company upon the same terms as prior to his death until drawn out by his legal representatives, who may draw the same one fourth in three months, one fourth in nine months, one fourth in fifteen months and one fourth in two years after the delivery to the other partners of a written notice requiring said payment," and that "If either partner shall die before the dissolution of this partnership the surviving partner or partners shall have the

right to purchase the share of his deceased partner in the partnership effects. In order to exercise this right the surviving partner or partners shall within thirty days from the appointment of an executor or administrator over the estate of the deceased partner give to the said representative a written notice of his election so to purchase." There was also a provision for determining the price to be paid for the share of the deceased partner if the surviving partner or partners and the representative of the deceased partner were unable to agree upon such price, which the partners should "pay or secure" to such representative.

At the death of the testator there stood to his credit on the books of the partnership on the so called surplus account the sum of $122,040.42, to the credit of Edward C. Ball on that account the sum of $58,040.08, and to the credit of the respondent Brooks the sum of $9,909.52. Thereafter an arrangement was made for the formation of a corporation — the Conant Ball Company — to take over the business of the partnership. In accordance with this arrangement the executrix of the will of Carlos E. Ball gave to the corporation a bill of sale of the testator's share in the personal property of the partnership and the trustees under the will gave to the corporation a deed of the testator's undivided interest in the real estate. The corporation issued preferred stock of the par value of $120,000 and common stock of the par value of $30,000. The executrix received in cash $22,040.42 from the partnership, $15,000 from Edward C. Ball, and $15,000 from the respondent Brooks. She also received preferred stock of the par value of $68,000 and a mortgage of all the corporation's real estate running to the trustees under the will in the amount of $32,000. Edward C. Ball received preferred stock of the par value of $52,000, on account of the amount credited to him on the so called surplus account. He withdrew the balance of the amount credited to him on this account, and the respondent Brooks withdrew the full amount so credited to him. In substance, therefore, as a result of the transaction the estate of the testator received for its interest in the capital of the partnership the sum of $30,000 in addition to the amount

received on account of the indebtedness of the partnership to the estate (see *Williams* v. *Brookline*, 194 Mass. 44) on the so called surplus account. The propriety of the transaction is attacked in this proceeding.

This proceeding is a petition in equity brought in the Probate Court, September 29, 1930, by the Malden Trust Company, trustee under the will of Carlos E. Ball, to recover from the respondents Brooks and Conant Ball Company property alleged to belong to the trust created by said will. Edward C. Ball (who died after the petition was brought, the executor of his will now appearing in his stead), the executor of the will of Elizabeth W. Ball, the administrator with the will annexed of the estate of Carlos E. Ball, Edmund Ball Hopkins and his minor children and their guardian were joined as parties respondent, but no relief is sought by the petitioner against any of them.

A hearing was had upon certain paragraphs in the answer of the respondents Brooks and Conant Ball Company in the nature of a plea to the jurisdiction of the court, the judge of probate overruled the answer, so far as it constituted such a plea, and reported the case for the determination of this court, and the decree was affirmed. *Malden Trust Co.* v. *Brooks*, 276 Mass. 464. Thereafter the case was heard on the merits by a judge of probate on an agreed statement of facts, documents, oral testimony and statements of Edward C. Ball (who had died before the hearing) when testifying in a hearing on his account as trustee. The judge made findings of fact, granted and denied requests for rulings of law and ordered the petition dismissed. The petitioner and the respondents, the executor of the will of Elizabeth W. Ball, the administrator with the will annexed of the estate of Carlos E. Ball, Edmund Ball Hopkins and the guardian of his minor children appealed. The evidence is reported.

The probate judge made these findings: "Upon all the evidence, I find no fraud on the part of Brooks and no breach of any fiduciary relationship on his part. He dealt with the executrix of the estate of Carlos E. Ball, who was ably represented by eminent counsel, Samuel K. Hamilton,

a leader of the bar of this county and Commonwealth. There is not a scintilla of evidence to tax him with double dealing or any breach of his duty to his client, the executrix. Upon Mr. Hamilton's advice, the executrix set the price of her testator's share in the partnership business, exclusive of a credit balance due him, at $6,000 more than it was carried on the books of the firm, and I find $30,000, the price paid, to have been fair and reasonable. The balance due her as executrix, from the partnership, was paid in cash, a first mortgage for $32,000 on real estate of the corporation, and six hundred eighty shares of preferred stock in the corporation, the mortgage bearing interest at five per cent and the preferred stock being on a five per cent dividend basis. This rate had previously been allowed the partners on any money they allowed to remain in the business as loans to it. This method I also find to have been a fair and reasonable method of taking care of the debt due the testator from the partnership, and no fraud nor breach of any fiduciary relationship was exercised upon either the executrix or her counsel by Brooks, nor was Hamilton acting the part other than that of a careful and faithful attorney for his client, the executrix. During the whole transaction dealing with the sale of the business to the Conant Ball corporation, I find Hamilton acted solely for the executrix. It is true that the firm of which he was the senior partner organized the corporation, but that fact alone is not conclusive that he acted in a manner unfaithful to the interests of his client. During the course of the years since the organization of the corporation, the mortgage has been paid off and the preferred stock retired. Interest was paid regularly on the mortgage and dividends paid upon the preferred stock, when due. The agreement the executrix made with Brooks has been fully carried out. None of the parties could have foreseen the boom period of the war years and thereafter. In the large profits of those years, the corporation was merely the beneficiary of the times, coupled, no doubt, with the exercise of good business ability on the part of its officers. To say at this late day that because of these large profits the petitioner is entitled to

recover because of concealment on the part of Brooks, concealment of something that could not have been foreseen from any prior experience of the business, leaves too much to the imagination to be ground for the relief herein sought. The parties dealt with the situation in a fair and equitable manner at the time. The executrix was the party Brooks was obliged to deal with and on the evidence before me she, as executrix, received for her testator's estate everything to which any fair and reasonable disinterested business man or counsel would say she was entitled at that time."

The petition was dismissed rightly.

Since this is a proceeding in equity this court reviews matters of fact as well as matters of law. And so far as the findings of the probate judge were based on written instruments, whether agreed statements of fact or documentary evidence, or on undisputed primary facts, we are in as favorable a position to reach conclusions as was the probate judge and we do so unaffected by his conclusions. But he was in a more favorable position to reach conclusions of fact on oral evidence than are we with only the transcript of the testimony before us, and his findings of fact based partly or wholly on such evidence will not be set aside unless plainly wrong. *Bratt* v. *Cox*, 290 Mass. 553, 557–558, and cases cited.

The transaction whereby the property of the partnership Conant Ball and Company was transferred to the corporation Conant Ball Company, which is involved in this proceeding, was involved in the settlement of the accounts of Edward C. Ball as trustee in a proceeding in the Probate Court which came to this court on appeal. *Ball* v. *Hopkins*, 268 Mass. 260. Findings there made, however, were not adjudications binding on the respondent Brooks, who was not a party to that proceeding.

The appellants contend that the respondent Brooks is accountable for the share of the profits of the respondent corporation Conant Ball Company received by him which were derived from the use by the corporation of the property of the estate of Carlos E. Ball on the grounds (a) that

in the transaction whereby the property of the partnership Conant Ball and Company was transferred to the corporation the respondent Brooks did not perform the duty devolving upon him as surviving partner and (b) that Edward C. Ball in that transaction was guilty of breach of his duty as trustee under the will of Carlos E. Ball, and that the respondent Brooks participated therein. The respondents Brooks and Conant Ball Company contend not only that the petition cannot be maintained on its merits, but also that the petitioner is not a party entitled to bring the petition.

First. The petitioner is a party entitled to bring the petition.

The contention to the contrary of the respondents Brooks and Conant Ball Company was disposed of in favor of the petitioner by the prior decision of this case. This court said, "If the allegations of the petition are proved . . . [the respondents Brooks and Conant Ball and Company] will be found to be holding in trust, by reason of Brooks's breach of fiduciary duty, a fund to which the petitioner and the beneficiaries under the will of Carlos E. Ball are entitled. . . . The Malden Trust Company, trustee under the will, is properly a petitioner, the beneficiaries and the administrator of the estate of Carlos E. Ball being joined as respondents. Brooks's fiduciary duty was owed not only to the executrix of his deceased partner's estate and her successors, but also to the trustees and beneficiaries under his will. His breach of duty deprived them all of property to which they were entitled." *Malden Trust Co.* v. *Brooks,* 276 Mass. 464, 471–472. And it clearly was implied that the remedies against these respondents were not limited to a suit by the executrix of the will of Carlos E. Ball or her successor in the trust for rescission of the agreement. *Malden Trust Co.* v. *Brooks,* 276 Mass. 464, 471. Compare *Ball* v. *Hopkins,* 268 Mass. 260; *Locke* v. *Old Colony Trust Co.* 289 Mass. 245, 252–253.

Second. The respondent Brooks is not accountable for profits of the corporation on the ground that he failed to perform the duty devolving on him as surviving partner.

The respondent Brooks as surviving partner owed a fiduciary duty to the estate of his deceased partner Carlos E. Ball. *Malden Trust Co.* v. *Brooks,* 276 Mass. 464, 470–471. This duty is based on the principle that upon the death of Carlos E. Ball the ownership of the partnership property, including the equitable interest in the partnership real estate, passed to the surviving partners subject to a liability to account therefor to the representatives of the deceased partner (*Hewitt* v. *Hayes,* 204 Mass. 586, 591–592, *Davis* v. *Bicknell,* 244 Mass. 352, 356, *Wellman* v. *North,* 256 Mass. 496, 501, see now G. L. [Ter. Ed.] c. 108A, § 25, [d]), that is, subject to a kind of trust for the benefit of the persons interested in the estate of the deceased partner. *Dewey* v. *Chapin,* 156 Mass. 35, 37. *Malden Trust Co.* v. *Brooks,* 276 Mass. 464, 470–471.

Though by the transaction above described the share of the deceased partner in the partnership property was transferred to the corporation Conant Ball Company, the transaction was in substance a purchase by the surviving partners of such share coupled with an adjustment of the indebtedness of the partnership to the deceased partner on the so called surplus account. This transaction was carried out following a notice, in accordance with the terms of the partnership articles, from the surviving partners to the executrix of the deceased partner of their election to purchase his share in the partnership property, and in pursuance of an agreement between the executrix and the surviving partners.

The fact that the respondent Brooks as a surviving partner owed a fiduciary duty to the persons interested in the estate of the deceased partner did not preclude him from purchasing the interest of the deceased partner in the partnership property. This would have been true even if there had been no provision in the partnership articles for the purchase by surviving partners of the interest of a deceased partner in the partnership property. *Denholm* v. *McKay,* 148 Mass. 434, 441. But those articles gave the surviving partners an independent right to purchase such interest — at least to the extent of the share of the de-

ceased partner in the capital of the partnership. *Denholm* v. *McKay*, 148 Mass. 434, 441. Compare *Murphy* v. *Murphy*, 217 Mass. 233; *Hale* v. *Wilmarth*, 274 Mass. 186. Whether this independent right would prevail over the right of the legal representative of the deceased partner to withdraw amounts credited to him on the so called surplus account if the legal representative had insisted on withdrawing such amounts in accordance with the terms of the articles need not be decided. In any event the "provisions of the partnership articles did not diminish Brooks's obligations as a surviving partner to deal fairly toward the executrix and the beneficiaries of the trust." *Malden Trust Co.* v. *Brooks*, 276 Mass. 464, 471.

Fair dealing toward the executrix and the beneficiaries required that in the transaction above described there be someone "to act with sole reference to the interests of the estate" (*Cummings* v. *Russell*, 258 Mass. 502, 508, see also *Denholm* v. *McKay*, 148 Mass. 434, 440), and that the surviving partner "disclose voluntarily all within his possession or knowledge from which a sound judgment as to the value" of the share of the deceased partner in the partnership property and his claims against the partnership might be found. *Malden Trust Co.* v. *Brooks*, 276 Mass. 464, 470. Findings by the probate judge, which are not plainly wrong, in connection with undisputed facts and documentary evidence, lead to the conclusion that these requirements were met.

The probate judge found properly that the respondent Brooks dealt with the executrix of the will of Carlos E. Ball. And she was someone "to act with sole reference to the interests of the estate" of the testator. The share of the testator in the partnership and its property and the indebtedness of the partnership to him represented by the credit on the so called surplus account were assets of his estate which passed to his executrix and it was within the scope of her duties as executrix not only to collect this debt of the partnership but also to sell the interest of the testator in the partnership property. *Leland* v. *Newton*, 102 Mass. 350, 351. *Magee* v. *Magee*, 233 Mass. 341, 345.

*Cummings* v. *Russell*, 258 Mass. 502. As was said in *Denholm* v. *McKay*, 148 Mass. 434, 441, "Of course the executors, if competent to act in the matter, might sell the assets to the surviving partner, provided they could agree on the price and terms." Furthermore, this court, when this case was here on the question of jurisdiction, recognized that the executrix was the proper person to sell the interest in the partnership of the deceased partner, saying that the respondent Brooks "in purchasing the interest of his deceased partner . . . owed a duty to the personal representative of the deceased partner . . . to acquaint such representative with full information as to the assets and the facts from which their value could be estimated or inferred." *Malden Trust Co.* v. *Brooks*, 276 Mass. 464, 470. It is true that the approval of the transaction by all persons interested in the estate of the deceased partner to whom the respondent Brooks owed a fiduciary duty after full disclosure of the facts to them, if they were competent to act, would have protected this respondent. See *Morse* v. *Hill*, 136 Mass. 60, 63–64; *Matthews* v. *Thompson*, 186 Mass. 14, 18–19; *Spilios* v. *Papps*, 288 Mass. 23, 30. And it is also true that the executrix was bound to account to these persons and took the risk of liability to them if in the transaction with the surviving partners she did not act in good faith and in the exercise of a sound discretion. *Pine* v. *White*, 175 Mass. 585, 590. *Bardwell* v. *Hatch*, 219 Mass. 43. *Forbes* v. *Allen*, 240 Mass. 363, 366. (However, it is not sought in this proceeding to charge the executrix with maladministration. Compare *Denholm* v. *McKay*, 148 Mass. 434; *Ball* v. *Hopkins*, 268 Mass. 260; *Spilios* v. *Papps*, 288 Mass. 23, 30.) But it does not follow that if the executrix was competent to act the respondent Brooks could not deal with her as the sole representative of the estate of Carlos E. Ball or was required to make disclosure to other persons interested in the estate.

The executrix was not incompetent to act in the transaction in behalf of the estate of Carlos E. Ball because of any personal interest adverse to the estate. She had no divided allegiance, as had the executor in *Denholm* v. *McKay*,

148 Mass. 434. And even if by reason of age, physical or
mental condition or lack of business experience she was not
competent to act without advice she was not incompetent
to act if advised by competent counsel acting solely for
her interests as executrix. Compare *Ball* v. *Hopkins*, 268
Mass. 260, 266, 268. In fact she acted for the estate under
the advice of competent counsel. Moreover, the finding
of the probate judge that such counsel during "the whole
transaction dealing with the sale of the business . . . acted
solely for the executrix" was based in part on oral evidence
and was not plainly wrong. There is evidence with respect
to the conduct of counsel in the matter of fixing the sale
price and in other particulars tending to show that he was
carefully guarding her interests as executrix. And the fact
that his firm organized the corporation Conant Ball Com-
pany does not require the conclusion that he was not act-
ing for her. The protection of the estate which she was
administering, which was to receive preferred stock in the
corporation Conant Ball Company in connection with the
adjustment of the rights of the estate in the partnership,
well may have been thought to require representation of
the estate in the organization of the corporation. More-
over, it is not to be inferred from the nature and terms of
the transaction that counsel was unfaithful to the estate
of the deceased partner or acting for the adverse interests
of the surviving partners. The transaction does not dis-
close such failure on the part of counsel to act in good faith
and in the exercise of a sound discretion as to show that the
conclusion of the probate judge that counsel was acting
solely for the executrix is plainly wrong. Compare *Dewey*
v. *Chapin*, 156 Mass. 35, 37. Considerations bearing upon
this matter are discussed later in another connection.

There was no breach of the fiduciary duty of the respond-
ent Brooks to disclose material facts. The finding of the
probate judge that "no fraud nor breach of any fiduciary
relationship was exercised upon either the executrix or her
counsel by Brooks" coupled with the ruling of the judge
that it was the duty of the respondent Brooks to make dis-
closure clearly imports a finding that there was no breach

of that duty. And this finding was not plainly wrong. Where the burden of proof of disclosure or nondisclosure rested is not material since there is a positive finding that there was no breach of duty and not merely a finding of failure to prove such a breach. See *Smith* v. *Smith*, 222 Mass. 102, 104–105. (Compare, however, as to burden of proof, *Farnam* v. *Brooks*, 9 Pick. 212, 223–224; *Dewey* v. *Chapin*, 156 Mass. 35, 37; *Smith* v. *Smith*, 222 Mass. 102, 106, with *Ball* v. *Hopkins*, 268 Mass. 260, a case which arose upon the settlement of the probate account of an express trustee.) There was evidence that, before the terms of the transaction were agreed upon, the executrix was informed in regard to the assets and liabilities of the partnership and its earnings for its last three years. Moreover, it appears that these facts were known to her counsel. And the respondent Brooks testified that he did not know of any fact about that business, its value, its prospects, or its experience in the past which counsel ought to know and which this respondent supposed that he did not know. It is obvious, moreover, from evidence which need not be recited in detail, that counsel was familiar with the general situation of the partnership and the terms of the proposed transaction. In these circumstances absence of evidence that the information required for a full understanding of the proposed transaction came directly to the executrix or her counsel from the respondent Brooks did not preclude a finding that there was no breach by this respondent of his duty of disclosure. The important thing was that the executrix, by reason of her own knowledge or that of her competent counsel acting in good faith solely for her interests as executrix (see *Putnam* v. *Handy*, 247 Mass. 406, 409), was "in a position to understand the nature and effect" of the transaction (*Ball* v. *Hopkins*, 268 Mass. 260, 266) so far as facts essential to such understanding were in the "possession or knowledge" of the respondent Brooks. *Malden Trust Co.* v. *Brooks*, 276 Mass. 464, 470.

The further question arises whether there was anything in the nature of the transaction between the estate of the deceased partner and the surviving partners to invalidate

it as to the respondent Brooks, though the estate was represented in the transaction by someone acting solely in its interests and there was no failure on the part of the respondent Brooks to disclose material facts. Though there was independent representation of the estate of the deceased partner by the executrix and, consequently, the respondent Brooks was not on both sides of the transaction, as was the executor in *Denholm* v. *McKay*, 148 Mass. 434 (see also *Ball* v. *Hopkins*, 268 Mass. 260; compare *Morse* v. *Hill*, 136 Mass. 60; *Witherington* v. *Nickerson*, 256 Mass. 351, 356), this respondent was subject to two restrictions in dealing with the executrix — one by reason of the fact that as a surviving partner he stood in a fiduciary relation to the estate and the other by reason of the fact that the executrix stood in a fiduciary relation to the persons interested in the estate and her authority was itself limited.

So far as the fiduciary relation between the respondent Brooks and the estate of the deceased partner is concerned, according to the rule generally applicable where such a relation exists and there is independent representation of the beneficial interest, if a transaction between fiduciary and beneficiary "is fair and open and no advantage is taken, it will be upheld." *Coates* v. *Lunt*, 210 Mass. 314, 318. See also *Brown* v. *Cowell*, 116 Mass. 461, 465. On the facts found by the probate judge, which are not plainly wrong, these requirements were met. That the trade between the surviving partners and the estate of the deceased partner was fairly and openly made, and no advantage was taken of the estate by failure to disclose material facts, appears from what has been said. And the transaction was fair with respect to price and medium of payment. See Pomeroy, Equity Jurisprudence (4th ed.) §§ 958, 963.

The amount of the indebtedness of the partnership to the estate of the deceased partner on the surplus account — $122,040.42 — is not questioned. And the price agreed upon for the estate's share in the partnership property — $30,000 — was found by the probate judge to be fair and reasonable. This finding was not plainly wrong. It is supported by the evidence of the facts, including the con-

dition of the partnership as to its assets and liabilities, known at the time of the transaction, which, rather than later events, must determine the decision. *Bardwell* v. *Hatch,* 219 Mass. 43, 45. See also *Bowker* v. *Pierce,* 130 Mass. 262, 264; *Green* v. *Crapo,* 181 Mass. 55, 58, 60; *Taft* v. *Smith,* 186 Mass. 31, 32. The only evidence of facts known at that time tending to show a larger value for this share was the record of the previous earnings of the partnership, and the force of such evidence is greatly weakened by the evidence that the deceased partner had been an important factor in the success of the business. The evidence as a whole tends to show that it was then probable that only through some arrangement by which the surviving partners were enabled to carry on the business could the estate collect the entire amount of the indebtedness to the deceased partner on the so called surplus account and receive so large a price for its share in the partnership property. And the estate was bound by the partnership articles to sell such share to the surviving partners if, as was the case, they elected to purchase it.

The estate received in cash the equivalent of the amount of the purchase price of the share of the deceased partner in the partnership property — $30,000 — and the sum of $22,040.42, on account of the indebtedness of the partnership on the so called surplus account, though the evidence does not show that the cash was so allocated specifically. The only serious question, therefore, as to the fairness of the transaction concerns the method adopted for payment of the remaining $100,000. The probate judge found that payment of this amount by the mortgage for $32,000 and preferred stock of the par value of $68,000 was fair and reasonable. He also found that the "parties dealt with the situation in a fair and equitable manner at the time," and that the executrix "received for her testator's estate everything to which any fair and reasonable disinterested business man or counsel would say she was entitled at that time." These findings were not plainly wrong. The transaction must be looked at as a whole. Its fairness involved various elements affecting sound business judgment includ-

ing the probability of a transaction more advantageous to the estate. Discussion of these elements in detail would serve no useful purpose. We refer, however, to some of them. Liquidation of the partnership was excluded by the partnership articles, and, moreover, the evidence tends to show that liquidation would have been less advantageous to the estate than the settlement agreed upon. The provisions of the partnership articles and of the will of the deceased partner did not permit the executrix to use the property of the estate to continue in the business as a partner sharing in the profits. Compare *Stearns* v. *Brookline*, 219 Mass. 238; *Wolbach* v. *Commissioner of Corporations & Taxation*, 268 Mass. 365. See also G. L. (Ter. Ed.) c. 195, § 7. And fairness in the transaction did not necessarily require full payment in cash. Indeed the partnership articles recognize that in some circumstances there need not be full payment in cash by the surviving partners for the share of the deceased partner in the partnership property. Furthermore, it is a reasonable inference from the evidence that it was not probable that a transaction on a cash basis on terms advantageous to the estate could have been made but that it would be advantageous to the estate to make an adjustment with respect to its interest in and its claims against the partnership upon terms which would leave the business in such a position as to assets and credits that it could be carried on profitably.

In such a situation the terms openly agreed upon were not plainly so unfair as to invalidate the transaction. By those terms the estate was to receive substantially the same return on the property left in the business as the partners received on the so called surplus account, subject to the risk that the profits of the corporation might not be sufficient to pay the dividends on the preferred stock. And to the extent of $32,000 the estate obtained security by a mortgage of all the real estate used in the business. This mortgage was not even a bad investment. That it could not be held to be a bad investment was decided on similar evidence in *Ball* v. *Hopkins*, 268 Mass. 260, 268. And though the decision in that case is not binding on the

parties to this suit, as a ruling of law on like evidence it is
to be regarded as authoritative. *Hill* v. *Levine,* 252 Mass.
513, 517. To obtain further security by way of mortgage
or other lien on property acquired by the corporation
might reasonably have been thought impracticable. Pre-
ferred stock, however, was issued to the executrix. This
preferred stock was cumulative as to dividends and pre-
ferred on "dissolution of this corporation or in case of the
termination of its business in any other way" as to divi-
dends and par value of the stock, though no provision was
made for its repurchase or retirement. The conclusion was
not required that, as contended by the petitioner, this
stock was invalid because issued in part for real estate of
the partnership, legal title to which was not conveyed to the
corporation until after the stock was issued to the execu-
trix, though before she transferred it. See *Mitchell* v.
*Mitchell, Woodbury Co.* 263 Mass. 160, 167. It appears,
however, that this stock was not readily marketable. But
there was evidence that the estate's credit on the so called
surplus account, which the preferred stock in part replaced,
could have been sold, if at all, only at a considerable dis-
count. And the conclusion is supported by evidence of the
assets and liabilities of the corporation and its probable
earnings that the stock constituted a safe investment. It is
true that it was said of this stock in *Ball* v. *Hopkins,* 268
Mass. 260, 266–267, that the "investment of such a large
part of the estate in the preferred stock would not ordina-
rily be considered a prudent investment," and that it was
held in that case that the stock was not "a proper invest-
ment" (page 268). But that decision was based in part on
the grounds that the executrix did not have independent
advice and was not informed of material facts, and that
the surviving partner there involved was also a trustee
under the will of Carlos E. Ball (page 266). A different
situation, however, existed here where the surviving part-
ner involved stood in no fiduciary relation to the estate
other than that of a surviving partner and he dealt with a
person acting solely in the interests of the estate having
full knowledge of material facts. And an investment in

such preferred stock, under these conditions, made in pursuance of a transaction reasonably adapted, in the existing circumstances, to realizing upon property of the testator, might be proper, though an investment in such stock of money in hand might not be proper. See *Taft* v. *Smith*, 186 Mass. 31. See also *Clark* v. *Garfield*, 8 Allen, 427; *Ball* v. *Hopkins*, 268 Mass. 260, 268; 11 R. C. L. page 144. Furthermore, even if the stock was not a proper trust investment, it would not follow necessarily that the transaction between the surviving partner and the representative of the estate was unfair.

So far as the limited authority of the executrix is concerned, no liability on the respondent Brooks arose by reason thereof out of the transaction unless, in that transaction, the executrix was guilty of a breach of trust of which the respondent had notice. *Trull* v. *Trull*, 13 Allen, 407. *Donnelly* v. *Alden*, 229 Mass. 109, 112. See also *McCarron* v. *New York Central Railroad*, 239 Mass. 64, 70. The appellants, however, among whom is the executor of the will of this executrix, do not contend that the executrix was guilty of any breach of her trust as executrix. Their contention is that she did not act independently in behalf of the estate — a contention which, as has been pointed out, is not sustained. Moreover, it is to be observed that the findings of the probate judge — which are not plainly wrong — which have been considered in their bearing on the fairness of the transaction between the executrix and the respondent Brooks, support the conclusion that the executrix was not guilty of any breach of trust. Though her primary duty was to collect the assets of the estate, she was not precluded from making a settlement with the surviving partners of her testator in good faith and in the exercise of a sound discretion (*Cook* v. *Richardson*, 178 Mass. 125, 130, *Bardwell* v. *Hatch*, 219 Mass. 43) which involved the acceptance by her of property in part payment of the purchase price for the testator's share in the partnership property and of the indebtedness of the partnership to him. 11 R. C. L. page 144. See *Villard* v. *Villard*, 219 N. Y. 482, 498. And the acceptance by the executrix of the mortgage on the real estate used

in business and the preferred stock in the corporation was not open to the objection that by such acceptance she used property of the estate to continue the business of the testator or subjected the estate to the liability of a partner. Compare *Hines* v. *Levers & Sargent Co.* 226 Mass. 214; *Stearns* v. *Brookline,* 219 Mass. 238, 240; *Kimball* v. *Whitney,* 233 Mass. 321, 333–334.

The fact that legal title to the real estate was conveyed by the trustees under the will of Carlos E. Ball is not inconsistent with the finding that the respondent Brooks dealt with the executrix, since the conveyance was made in pursuance of an agreement between the surviving partners and the executrix for the purchase and sale of the testator's share in the partnership property.

The conclusion here reached is not in conflict with the decision in this case when it was here before (276 Mass. 464), for that decision was made on allegations of the petition which are not sustained by the proof. And the present case is distinguishable from *Ball* v. *Hopkins,* 268 Mass. 260, which arose out of the same transaction, by reason of substantial differences in the findings of fact. See *Commercial Credit Corp.* v. *Commonwealth Mortgage & Loan Co. Inc.* 276 Mass. 335, 340.

Third. The respondent Brooks is not accountable for profits of the corporation received by him on the ground that Edward C. Ball was guilty of breach of his duty as trustee under the will of Carlos E. Ball, and this respondent Brooks participated therein.

The circumstances of the transaction whereby the property of the estate of Carlos E. Ball was invested in the mortgage and the preferred stock have already been considered and the conclusion has been reached that the respondent Brooks was not guilty of any breach of his fiduciary duty as a surviving partner in connection therewith. And though some of the findings refer specifically to him, the findings as a whole — which are not plainly wrong — lead to the same conclusion as to Edward C. Ball, considered solely as a surviving partner. The estate was represented in the transaction by the executrix who was advised by competent counsel

acting solely for her, and, acting under such advice, she was in a position to understand the nature and effect of the transaction. And the transaction was fair and reasonable. In these particulars the findings of fact differ materially from those in *Ball* v. *Hopkins*, 268 Mass. 260.

The respondent Brooks did not receive profits from the corporation by reason of any breach of duty of Edward C. Ball as trustee under the will of Carlos E. Ball in connection with this transaction. It was clearly contemplated by the partnership articles that surviving partners should deal with the executrix or administrator of a deceased partner, and it is fairly to be inferred that Carlos E. Ball, knowing the terms of these articles, named his wife as executrix, though naming one of his partners as a trustee, in order that there might be some person "able to act with sole reference to the interests of the estate" in dealing with the surviving partners. See *Denholm* v. *McKay*, 148 Mass. 434, 440. See also *Vyse* v. *Foster*, L. R. 8 Ch. 309, 329, 330. And in fact the agreement between the estate and the surviving partners was made in behalf of the estate by the executrix acting solely in its interests. Moreover, the agreement in its original form was made before Edward C. Ball was appointed a trustee — though at the time he knew that he had been named in the will as a trustee. This agreement provided that there should be issued to the executrix preferred stock to the amount of $100,000 and also provided for the transfer to the surviving partners or their order of all her interest as executrix in the personal property of the partnership and to the surviving partners or their nominee of "all the interest that Carlos E. Ball had in the real estate which belonged to said firm." The agreement was later modified — at a time which does not appear — by providing for the mortgage of the partnership real estate for $32,000 and the reduction of the amount of preferred stock to $68,000. This modification was made at the insistence of counsel for the executrix and was advantageous to the estate. After the appointment of the trustees, in pursuance of the agreement between the executrix and the surviving partners, Edward C. Ball joined with the other

trustees in a deed to the corporation of the undivided interest of Carlos E. Ball in the partnership property. However, the modification of the agreement and the conveyance by the trustees did not change the nature of the transaction as a transaction between the executrix and the surviving partners. See *Warren* v. *Pazolt*, 203 Mass. 328, 340–341.

Whether, since the agreement was made by the executrix with the respondent Brooks and Edward C. Ball — first a potential trustee and later an actual trustee, under the will of Carlos E. Ball — jointly, it could be rescinded need not be decided for this is not a suit for its rescission. See *Malden Trust Co.* v. *Brooks*, 276 Mass. 464, 471. Nor need it be decided whether, on the findings of fact and the evidence in this case, Edward C. Ball, by reason of his relation to the estate as trustee under the will, would be required to account to the estate for profits derived by him directly or indirectly from the transaction, though it was fair and the estate was independently represented by the executrix. Compare *Ball* v. *Hopkins*, 268 Mass. 260, 267, 270, where the facts found were somewhat different. If, on the findings of fact and the evidence in this case, Edward C. Ball had a duty to account for such profits it did not result from an improper sale or investment by him of the trust property — for the sale or investment was made by the executrix — but, rather, from the principle that as trustee under the will he was accountable for profits derived by him directly or indirectly from property which in effect he had purchased from the executrix. See *Hayes* v. *Hall*, 188 Mass. 510, 511; *Vinal* v. *Gove*, 275 Mass. 235, 241–242; *Spilios* v. *Papps*, 288 Mass. 23, 30. His duty, if any, to account for profits resulting from the application of this principle, however, was limited to accounting for the profits received by him personally. *Ball* v. *Hopkins*, 268 Mass. 260, 273.

But the respondent Brooks, unlike Edward C. Ball, was not a trustee under the will of Carlos E. Ball and, consequently, was not accountable for profits on the principle above stated. This respondent was entitled to deal with the executrix in the transaction subject only to the limita-

tions imposed on him as a surviving partner considered on the other branch of this case. And he was not precluded from protecting his rights as a surviving partner under the partnership articles by making a fair adjustment of such rights with the executrix acting for the estate because of the fact that the other surviving partner, Edward C. Ball, was a trustee under the will and, as such, had a fiduciary duty to the estate, even if that duty extended to accounting for profits which he received directly or indirectly from property of the estate acquired by him from the executrix as a result of the transaction. Compare *Vinal* v. *Gove*, 275 Mass. 235, 242. Though the agreement with the executrix was made by the respondent Brooks and Edward C. Ball jointly, the respondent Brooks is accountable to the estate only for profits received by him which belonged to the estate by reason of his acts. *Ball* v. *Hopkins*, 268 Mass. 260, 273. Consequently he is not accountable to the estate for profits received by him by reason of his agreement with the executrix which, on the findings of fact and on the evidence, was fair and reasonable. Such profits did not come to him through any breach of trust. *Flockton* v. *Bunning*, L. R. 8 Ch. 323, note, is, therefore, distinguishable. So also is *Trull* v. *Trull*, 13 Allen, 407, relied on by the petitioner. See *Donnelly* v. *Alden*, 229 Mass. 109, 112. And this respondent is not accountable for the profits received by him as for profits received from Edward C. Ball, trustee under the will of Carlos E. Ball, with notice of a breach by said Edward C. Ball of his duty as such trustee. They were not profits for which Edward C. Ball was accountable to the estate and were not received by the respondent Brooks from him, but, rather, were received by this respondent by reason of his agreement with the executrix.

Fourth. What has been said disposes of questions raised by requests for rulings so far as those questions are material to the decision of this case. Nothing in the disposition of these requests for rulings weakens the force of the findings of fact made by the probate judge. Nor was there any prejudicial error in the exclusion or admission of evidence.

*Decree affirmed,*